## WILLIS & CONLEY *vs.* THOMAS B. IVES et al.

If a plaintiff demur to the defendant's pleas, and the demurrer be overruled, and a judgment of *respondeat ouster* awarded by the court, without being asked by the plaintiff, the plaintiff may reply and go to trial, without waiving his demurrer.

It is a general rule, that, wherever a contract or instrument does not of itself import a consideration, the consideration on which it was founded, must be averred in the pleading.

To sealed instruments all parties are principals, unless it appear on the face of the instrument that some are sureties, and they cannot, by plea, be allowed to change their character; they are estopped by their seals.

The plaintiffs brought an action on a writing obligatory, which did not on its face show that any of the parties were sureties; the defendants averred in their pleas, that they were only sureties, and that the plaintiffs by contract with their principal, without their knowledge or consent, extended the time of payment ten months. Held, that such a defence cannot be made at law, and can only be set up in a court of chancery.

In error from the circuit court of Yalobusha county.

William T. Willis, and William E. Conley the plaintiffs in error, brought an action of debt on a writing obligatory, for $13,356,$\frac{74}{100}$, against Thomas B. Ives, William S. Wyatt, Anthony Hatch, John K. Mowbray, George A. Thompson, John G. Hadnot, John W. McLemore, and Thomas D. Barbour, to the September term, 1839, of the circuit court of Yalobusha county. The declaration was in the usual form. The suit was discontinued as to Hadnot, upon whom the process was not executed. Ives & McLemore withdrew their pleas, and suffered judgment to be entered against them by default, and the other defendants filed two special pleas, which were as follows, to wit: " And the said defendants (naming these for whom the plea was intended) come and defend the wrong and injury, &c., and for plea in this behalf, saith that they were the securities only of the defendant, Thomas B. Ives, in the writing obligatory mentioned and set forth in the said plaintiffs' declaration, and that after the said writing obligatory became due and payable

according to the tenor and effect thereof, to wit: on the 19th Sept. 1839, at the county aforesaid, without their knowledge, consent or approbation, the said plaintiffs by contract, agreement and arrangement with their said principal, Thomas B. Ives, did give and extend further time for the payment of the moneys in the said writing obligatory above mentioned to the said Thomas B. Ives, principal aforesaid, to wit: the space, or time of ten months ; 'all of which these defendants are ready to verify, &c. Wherefore they pray judgment.

" GILLESPIE, Att'y. for Defts."

" And for further plea in this behalf, the said defendants (same as in first plea,) come and defend, &c., and saith that they were the securities only of the said Thomas B. Ives, to the said writing obligatory, mentioned in the same plaintiffs declaration, and that after the said writing obligatory had become due and payable to the said plaintiffs, according to the tenor and effect thereof, and after suit had been commenced thereon, against said principal and securities by said plaintiffs, for the recovery of the moneys therein specified, without the knowledge or consent of these defendants, the said plaintiffs, by an arrangement and agreement with their said principal, Thomas B. Ives, did dismiss their said suit as aforesaid, and give to the said principal a further extension of ten months time, to wit: on the day and year aforesaid, at the county aforesaid. And the said defendants in fact, saith that at the time the said suit was dismissed as aforesaid, and the further time as aforesaid, by the said plaintiffs to said Ives, that their said principal, Thomas B. Ives, was solvent, and the moneys then due, and owing said plaintiffs, on said writing obligatory, could have been made and collected out of the estate of their said principal, Thomas B. Ives. And the said defendants, say that their said principal, Thomas B. Ives, has become insolvent in his circumstances, and that in consequence, and by reason of the dismission of said suit, by the said plaintiffs aforesaid, and the giving of further day and time as aforesaid to said Ives, these defendants were and are discharged from their original obligations, as charged in the plain-

tiffs' declaration; and this they are ready to verify. Wherefore they pray judgment.

"GILLESPIE, MARSH & AYRES, for Defts."

To these pleas, the plaintiffs demurred; their demurrer 'was overruled by the court, and a judgment of *respondeat ouster* awarded. The plaintiffs then replied, and on issue joined, the jury found a verdict for defendants. The plaintiffs now bring the case to this court, by writ of error.

*Fisher* and *Cheves*, for plaintiffs in error.

The errors assigned, are, 1. That the court erred in overruling the plaintiffs' demurrer to the two pleas of the securities. 2. The court, at the November term, 1840, erred in withdrawing a juror and continuing the cause without the consent of the plaintiffs. 3. There is error in the judgment rendered againt Ives & McLemore, and in favor of the defendants; and that said judgment against Ives & McLemore is not rendered for the debt in the declaration mentioned. The judgment, as it now stands, is neither joint nor several. The first error assigned, presents a multiplicity of questions for consideration, touching the form and substance of the pleas demurred to. The first plea alledges that the plaintiffs, " by contract, agreement and arrangement, with the principal defendant, Ives, did give and extend the time of payment, &c. ten months." The questions which the demurrer raises upon this plea, are, 1. Whether the matter alledged is averred with sufficient certainty, and in that formal and precise manner which the rules of pleading require? 2. Whether or not the allegations should not be made, that further time was given, &c. by an obligation under seal? and, 3. Whether the matter, as it is alledged, be sufficient in law, to discharge the sureties ; or, in other words, can the sureties defend themselves at law, against the present action? It may be stated, as a general rule in pleading, that the defendant by his plea in avoidance of the plaintiffs' action, must aver all those matters necessary in law to defeat the action. And those averments must be made in that manner which the law hath either pre-

scribed or the courts have long approved. In a plea of this kind, admitting for the sake of argument, the contract could be voided by parol, which we deny,) what was necessary for it to disclose? This question may be answered by asking another one, to wit: What was necessary for the securities to prove upon the trial? It was necessary for them, upon the trial, to prove that the plaintiffs, without their knowledge or consent, had entered into a contract in law binding upon them, to enlarge the time of payment to Ives, for ten months, or some other definite period; by which contract the plaintiffs should have placed it out of their power to sue Ives, or in any manner to molest him during the period named. Does this plea disclose any such agreement or contract between the plaintiffs and Ives? It does not. The language of the plea is, that the plaintiffs, " by contract, agreement and arrangement with their principal obligor, Ives, did give and extend time," &c. Now this is one of the great objections we have to this plea, to wit, the use of the words contract, agreement, and arrangement. The plea, instead of using the words " contract and agreement," &c. should aver those facts, necessary in law to constitute a contract, agreement, &c. to wit, consideration, &c. The term " contract," is a conclusion which we draw from certain premises. It is not matter of fact, but a deduction which we make from a certain state of facts. In the language of the law, it is " an agreement founded upon a sufficient consideration, to do or not to do, a particular thing." Now this is one of the great defects in this plea, to wit: no averment of any consideration, for extending time of payment, &c. to Ives, for, without it, no contract can be binding in law. A consideration must always be averred in pleading, and why? because it is for the court to say whether the consideration be sufficient, or binding in law. 1 Bacon abr. 277, 279. A consideration is absolutely essential to support all parol promises or agreements; and it is so far essential that without it no promise is, in law, binding. See Comyns on Cont. p. 8. The plea should set forth a contract sufficient in law to bar the plaintiffs' action. Bacon uses the following language on the subject. " As the plaintiff's action must have all essentials necessary to

maintain it, so the defendant's bar must be substantially good; that is, the essence or gist of the plea must be such as, if found for the defendant, the court, according to the rules of law, must dismiss or give judgment for him." 5 Bacon, 404. " But if the gist of the bar be naught, it cannot be cured, even by a verdict found for him." Ib.

The term contract or agreement is but a conclusion in law, and is really matter of law. " The defendant cannot plead matters of law, but must plead matters of fact." See Gould on Pleading, p. 357, c. 4, § 96. " Every special plea must contain issuable matter, for the plain reason that it otherwise would not be triable." Ib. The principle for which we contend, is, that the securities by their plea, should disclose a contract, sufficiently certain and binding upon the plaintiffs; that if they, the plaintiffs, had sued Ives upon the original contract, at any time before the expiration of ten months, he, Ives, could have pleaded this contract, enlarging the time of payment, in bar of the said action. Does the plea set forth any such contract? It does not. It cannot be ascertained from the plea, whether the contract was binding upon the plaintiffs or not. If the contract enlarging the time of payment, was not binding upon the plaintiffs, and was not sufficient in law to bar them from pursuing their remedy against Ives, on the original contract, during the enlarged time of payment, the securities are not released. To this point all the authorities tend. This is the principle recognized in all of them. To discharge a surety, the plaintiffs must do some act which puts it out of his power to sue the principal during the enlarged time of payment. This act must be based upon some new consideration, binding in law. See *King* v. *Baldwin*, 2 Johns. Ch. R. 558. *Sneed's* Ex'tor v. *White*, 3 J. J. Marsh, 527. *Rutledge* v. *Greenwood*, 2 Dessaus. 389. *Burn* v. *Poag*, 3 Idem. 604. *Buchanan* v. *Hoadley*, 4 Har. & McHenry, 41. *Hampton* v. *Levy*, 1 McCord's Ch. 112. *Smith* v. *Timo*, Idem. 443. *Stout* v. *Ashton*, 5 Monroe, 252. *Norris* v. *Crumy*, 2 Raw. 323. 4 Har. & McHen. 41, is full on this subject. *McKenny's* Ex'tor v. *Waller*, 1 Leigh, 434. *Alcock* v. *Hill*, 4 Leigh, 622. The court in this last case, used the following language. " The con-

stituents of this principle, are, 1. A consideration; for without it, a promise to indulge is not binding. 2. A promise, or an agreement to indulge; for without it the hands of the creditor are not tied, whatever collateral security he may have received. 3. That the promise should not be altogether indefinite; for, an indefinite promise of forbearance is void and nugatory, and is held not to be an adequate consideration to support even a promise, since the forbearance might be but an hour, which would be a forbearance, indeed, but of no advantage to the debtor; and, 4. That the surety should not have assented to the indulgence given." All which principles have been recognized by this court, in the case of *Newell & Pearce* v. *Hamer* et al. 4 Howard, 684. In the case of *Hunt* v. *Bridgham*, 2 Pick. R. twenty years had elapsed after the debt became due, before suit was brought, and the court held the surety was bound, because it did not appear that the creditor had ever at any time, placed himself in a condition in which he could not sue the principal.

It may be safely stated, as a general rule, that mere inactivity in collecting the debt by the plaintiff, will not discharge a surety. Neither will a forbearance to sue, not based upon some new consideration, and not for some definite period, discharge him. This doctrine is fully recognized in all the authorities cited. But the principle recognized in all of them, is, that to discharge a surety, the creditor and principal debtor must enter into some new contract, based upon some new consideration, and by which new contract, " the hands of the creditor are tied;" and he must have placed it out of his power to coerce payment from the principal, during the enlarged time.

But where the action is founded upon an instrument under seal, this defence of the surety cannot be made at law. If there be a remedy at all, it is in a court of equity. " In general, giving time to the principal, affords no defence to an action against the surety, where he is bound by a specialty." 2 Stark. Evidence, p. 777. " It is no defence at law to an action on a bond against a surety, that the obligor by a parol agreement, has given them to the principal." *Davy* v. *Prendergast*, 5 B & A. 187. Nor is it a defence in equity. 6 Mad. 124. 8 Price, 467.

Willis & Conley, v. Ives et al.

It may here be proper to notice the second objection to the first plea, to wit : could the time of payment be delayed without a writing under seal? It could not. " A variation by parol, of the terms of an agreement under seal, can avail neither plaintiff nor defendant at law." 2 Bacon's Abr. 93. 3 Term R. 590. " Every thing is dissolved in the same mode in which it is bound together." Noy's Max. 10. There cannot possibly be a doubt about the common law rule on this subject, that an obligation under seal can only be discharged, varied or altered by another obligation of equal dignity. It being then established, that the defendants' plea is defective on common law principles, they must show some statute, either changing or abolishing this rule of the common law. Is there then any such a statute? There is not. The only statute which has even a remote bearing, is found in How. Hutch. p. 587, § 4, which is in these words : " And it shall, and may be lawful for the defendant or defendants in any suit or action, founded on any writing under seal by a special plea, to impeach, or go into the consideration of the same, in the same manner as if the said writing had not been sealed, any law to the contrary notwithstanding." The defendants cannot certainly expect to come within the provisions of this statute—because it has nothing to do with the alteration or enlargement of a contract. It was intended to give to a defendant one other defence against a writing under seal which the common law did not allow him to make, to wit: to show either want, or a failure of consideration; neither of which he was allowed to inquire into, in an action founded on an instrument under seal at common law. " The want or failure of consideration cannot be pleaded in bar to action on a bond." 5 Bacon's Abr. 178. 2 Mass. R. 159. This was the only object of this statute, to allow a party to plead, either a want or failure of consideration, to an action founded upon a specialty. This statute must be construed strictly, and why? because its object is to abolish a principle of the common law. " Statutes are to be construed in reference to the common law, for it is not to be presumed the legislature intended to make any innovation upon the common law, further than the case absolutely required."

1 Kent's Com. 433–34.   Plow. 365.   11 Mod. 149.   6 Dane's Abr. p. 589, § 20.   10 Johns. R. 579.   7 Johns. R. 477.

If, then, the defendants were discharged by a writing under seal, was it necessary for them to aver it in their pleas? It was, and to make profert of it. "Profert must be made of a bond, that the court may see that it is properly executed, and therefore it is matter of substance that profert be made of it." 5 Bacon's Abr. 169.

The objections to the first plea having been disposed of, we will now proceed to notice the second plea. This plea is certainly bad, because it attempts to put in issue three distinct matters of avoidance, to wit: the dismission of a suit by plaintiffs. 2. The giving a further day of payment to Ives. And, 3. The insolvency of Ives. This plea is clearly bad. 1. For duplicity. 2. It is informal. And, 3. The matter pleaded is not sufficient in law. As to duplicity—see Ste. Plea. 185. Gould 214.

As to the informality, the plea does not state in what court suit was commenced, when it was dismissed, or when commenced, &c., and does not conclude, as pleas of this kind should, by saying—"And this they are ready to verify by the record aforesaid." This is properly matter for the court to try.

But the substance of the plea is not sufficient. The discontinuance of a suit, affords no ground of relief to a surety. "A delay to sue, or even a discontinuance of a suit brought, cannot absolve the surety from his liability. *Hunt* v. *Brigham*, 2 Pick. Rep. 584. The principle upon which sureties are relieved, proceeds upon the ground of fraud. That the creditor has done some act, which operates as a fraud upon their rights. Quere, Should not fraud be averred in the pleas? That the defendants cannot defend themselves at law, see *Sprigg* v. *The Bank of Mount Pleasant.* 10 Peters' Rep. 263. This case is full on this subject.

*Gholson,* for defendants in error.

The cause of error, which seems to be chiefly relied on by the counsel for the plaintiffs in this cause, is that the court below erred in overruling the demurrer to the pleas.

Before entering into the merits of the pleas filed in this cause, and on which issue was joined and a verdict rendered, it is first to be considered whether the plaintiffs can now, and in this court, inquire into the correctness of the decision of the court below, on the demurrer to the pleas? Is there, in truth, any demurrer now in the record? Do not the subsequent proceedings show a virtual withdrawal and abandonment of the demurrer?

At common law, the judgment on demurrer to a plea in bar was final. Our statute has changed the common law in one particular: it has placed pleas in bar in the same situation as pleas in abatement, when a demurrer is sustained. In such cases the judgment of the court is *respondeat ouster.* There is no change in cases when a demurrer is overruled to a plea in bar—the judgment of the court is final.

A practice, however, has grown up, both in England and in the United States, to permit the party demurring, after judgement overruling the demurrer, to withdraw the demurrer and reply. 1 Tidd's Prac. 709. Graham's Prac. 660. Mansel on Demurrer, 70. Law Lib. vol. 24.

But no case can be found in which a replication has been allowed, after judgment overruling the demurrer, but upon the withdrawal of the demurrer. If it be not actually withdrawn the replication is considered a virtual withdrawal. *Craig* v. *Blow,* 3 Stewart's Rep. 448. See 8 Leigh's Rep. 541.

It is contended that in all cases, by pleading or replying to the merits, a party waives any dilatory plea or demurrer, previously put in, and which may have been decided against him; and that he cannot have the propriety of such decision inquired into in the appellate court. *Acre* v. *Ross,* 3 Stewart, 288. 3 Ib. 444. *Dana* v. *Staples,* 21 Pick. Rep. *Pattee* v. *Harrington,* 11 Pick. Rep. 221. *Webster* v. *Teirnan,* 4 Howard, 352.

The reason of these decisions is, that the party might have appealed on the judgment from the demurrer. A reason which applies with full force to the present case. The asking and obtaining leave to reply to the pleas, is certainly an acquiescence

in the decision of the court below, and precludes the party from afterwards, in an appellate court, assigning error in that decision.   To allow him to do so, would be to encourage parties to put in demurrers to all the proceedings subsequent to the declaration, hoping to avail themselves in the appellate court of any possible error that might be found in them, and thereupon obtain a final judgment, as no amendment could be allowed in that court.

It is therefore contended, that the replications to the pleas in this case, would only have been received on the supposition of a previous withdrawal of the demurrer ; that, though it does not appear on the record expressly that the demurrer was withdrawn, the subsequent proceedings have the same effect, and the plaintiffs cannot now rely on the demurrer, or have the propriety of the disposition made of it in the court below examined in this court.

If, however, the court should think otherwise, it is submitted that the pleas are substantially good and sufficiently formal.

In answer to the only grounds of demurrer to the pleas which it is deemed necessary to consider, it is insisted that they are not available, for two reasons.  First, that the plaintiffs, to avail themselves of their objections to the pleas, should have either set out the writings obligatory on oyer, before he demurred, or should have replied that the defendants were estopped by the writings obligatory from denying that they were principals, and asserting that they were sureties.   For all that appears on the record, the defendants may have signed the writings obligatory, as securities.   In such cases similar pleas have been held good. See *Bank of Steubenville* v. *Carrol*, 5. Ham. 207.  10 Peters, 267.

If the action had been founded on a promissory note, there can be no doubt that the pleas would be good.   *Pain* v. *Packard*, 13 Johns. Rep. 173.

In the case of *Sprigg* v. *The Bank of Mount Pleasant*, 10 Peters, 267, the supreme court of the United States assign the reason why such plea would not be good as to a writing obligatory, namely, that the consideration of a writing obligatory

cannot be inquired into in a court of law. From this follows the second reason why the objections taken to the pleas in this case cannot hold good in this State, however valid they might be elsewhere. By our statute, Rev. Code, p. 118, the consideration of a writing obligatory may, by a special plea, be impeached, or inquired into, in the same manner as if it were not under seal. Whatever defence would be good against a promissory note in England, or in the other States of the Union, is, in this State, equally good against a writing obligatory.

In reference to the form of the pleas, it is objected that they are too general. In answer, it may be observed, that the facts pleaded are more properly within the knowledge of the plaintiffs, and in such cases generality of pleading is always allowed.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

The plaintiffs instituted this action on a writing obligatory made by the defendants. Ives and McLemore suffered a default, and a discontinuance was entered as to Hadnot. The other defendants filed two special pleas; first, that they were mere sureties in the writing obligatory, and after it became due, the plaintiffs, without the knowledge, approbation or consent of the defendants, by contract, agreement and arrangement with Ives, the principal, extended the time of payment ten months, whereby they were discharged. Second, the same as the first, with the additional circumstances that suit had been brought on the writing obligatory which the plaintiffs dismissed, and gave a further time of ten months, and that Ives, the principal, was then solvent, but had since become insolvent. In both pleas it is averred that the time was given "by contract, agreement and arrangement," without averring a consideration for the contract. To these pleas the plaintiffs demurred; the demurrer was overruled and *respondeat ouster* awarded, under which the plaintiffs replied, and a verdict found for the defendants.

There is no other question involved in the case than that

which arises on the plaintiffs' demurrer to defendants' pleas, and it is insisted that this cannot now be examined, because, by replying, the plaintiffs waived their demurrer. This position would probably be the correct one, if the court had not rendered judgment of *respondeat ouster*, and there is nothing in the record to show that the plaintiffs asked leave to reply. The court would probably have been justified in rendering final judgment, but it did not do so; and it would be too rigid to say that the plaintiffs waived their right, by complying with the interlocutory judgment of the court, unless it should also appear that the judgment was given at their instance. If the defendants had complained of the judgment of *respondeat ouster*, we might have reversed on error brought by them, but then we would not have entered a final judgment in their favor, without inquiring whether we could properly do so on the demurrer. If the plaintiffs had failed to reply, then evidently they might have attacked any judgment rendered on the demurrer, and as the court did not give final judgment, we can perceive no reason for holding that the plaintiffs waived their right by conforming to the judgment of *respondeat ouster*. A waiver must arise from the voluntary act of the parties. The plaintiffs should not be prejudiced by an erroneous judgment of the court, so that, under the circumstances of the case, we cannot well do otherwise than examine the judgment on the demurrer.

One of the objections to the pleas is, that they do not aver a consideration for the contract to give time. Certainly by averring the consideration on which the agreement was formed, the pleas would have been more in conformity to the correct standard of special pleading. Such a contract was not binding without a consideration, and it is a general rule that, wherever a contract or instrument does not of itself import a consideration, then the consideration on which it was founded must be averred in pleading.

But the case presents a difficulty still more formidable. These pleas were interposed to an action on a sealed instrument, which, by the common law cannot, we apprehend, be sustained.

To sealed instruments all parties are principals, unless it appear on the face of the instrument that some are sureties, and they cannot by plea be allowed to change their character; they are estopped by their seals. The case of *Sprigg* v., *The Bank of Mount Pleasant*, 10 Peters, 257, was in every essential particular like the present. In that case the parties had acknowledged themselves bound as principals, but this circumstance made no difference; it was only a reiteration of what the law had already declared, unless the contrary appeared on the instrument. And the court laid down the rule expressly, as well settled, that when principal and surety bind themselves jointly and severally in a bond, although there is no admission in the instrument that all are principals, yet the surety cannot aver by pleading that he is only a surety. This is no doubt the correct rule, and must prevail unless the statute will let in such a defence. It provides that the defendant, in an action on a sealed instrument, may, by plea, impeach or go into the consideration of the same as if it had been a promissory note. This provision seems to have been designed to enable the party to reach the consideration by plea, but the plea here sets up matter subsequent and in discharge of the defendants, and we are not prepared to carry the statute so far as to embrace the defence assumed in this plea.

It has been common for sureties, in forthcoming bonds, to avail themselves of such a discharge on motion, but the reason for this is obvious. Such bonds show, on their face, the character of the respective obligors. In the case of *The People* v. *Jansen*, 7 Johns. Rep. 337, the court held that such a defence could be let in at law, but the reason was, that the suretyship appeared on the face of the bond. When this is not the case, this defence can only be set up in a court of chancery.

It is insisted that the plaintiffs should have replied the estoppel instead of demurring, but this was not necessary, inasmuch as the declaration averred the signing and sealing of the instrument. Nor was it necessary to set out the instrument before demurring. If it showed on its face that the defendants were

Willis & Conley *v.* Ives et al.

only sureties, it was for them to crave oyer and set out the bond, and then their plea might have been good.    It is intimated, in the case referred to in 10 Peters, as above, that the proper course is for the plaintiffs to demur to the plea.    The court then erred in overruling the demurrer, for which reason the judgment is reversed and cause remanded.